26 So.2d 490

**FONTENOT v. JONES.**

No. 37761.

April 22, 1946.

Rehearing Denied May 27, 1946.

Pugh, Buatt & Pugh, of Crowley, and Dale, Richardson & Dale, of Baton Rouge, for defendant-appellant.

E. Herman Guillory, of Ville Platte, for plaintiff-appellee.

PONDER, Justice.

The plaintiff, Frank C. Fontenot, brought suit against the defendant, L. J. Jones, seeking to recover $8,400 with legal interest from judicial demand until paid. The plaintiff alleges that he sold the defendant an oil, gas and mineral lease on 42 acres of land, situated in Evangeline Parish, June 16, 1939, for the sum of $8,400. He alleges that the defendant gave him a check for the purchase price on the date the lease was executed, drawn on the Bank of Commerce & Trust Company of Crowley, Loui-

siana, payable to the order of the plaintiff. He alleges that payment was refused on the check when it was presented to the bank at the instructions of the defendant. He alleges that he has made repeated amicable demand on the defendant for payment of the check or payment of the consideration of the lease to no avail. He also avers that an oil well was being drilled on a tract of land adjoining the 42 acres on which this lease was given at the time the lease was executed.

In answer to the suit the defendant admitted the execution of the lease and the agreed consideration of $8,400. However, the defendant avers that, prior to and at the time of the execution of the lease, the plaintiff and he entered into a contemporaneous and suspensive oral agreement to the effect that contract was not to be effective or the check paid until the title of the leased lands were approved by C. A. Storer. He avers that the title was never approved by C. A. Storer and for that reason the check as well as the contract of lease is null and of no effect.

In the alternative the defendant avers that the lease was made out to him for convenience, with the knowledge and consent of the plaintiff, for the purpose of carrying into effect an agreement between the plaintiff and defendant as to the retention of an overriding royalty by the plaintiff and the payment of a commission by the plaintiff to the defendant of a 1/96 overriding royalty. He avers that he was

acting as an agent for the plaintiff in consideration of the 1/96 overriding royalty as a commission for his services in negotiating the lease from the plaintiff to C. A. Storer and that the lease was executed in the name of the defendant as lessee only for convenience. He avers that, if the plaintiff has a claim against anyone in connection with the lease transaction, it would be against C. A. Storer, who represented Vincent & Welch in the transaction, or against Vincent & Welch, who actually were to purchase and pay for the lease.

In the further alternative the defendant avers that the plaintiff's title to the leased lands was not at the time of the execution of the lease and is not now valid.

Upon trial of the case the lower court gave judgment for the plaintiff. The defendant has appealed.

On this appeal the issue is raised as to the admissibility of parol evidence to prove a contemporaneous and suspensive oral agreement to the effect that the contract of lease and the payment therefor was dependent upon the approval of plaintiff's title to the leased lands by C. A. Storer. For the purpose of a decision in this case, if we were to concede that the parol evidence is admissible, it would not afford the defendant any relief for the reason that the defendant has failed to prove such an agreement.

From the record it appears that the plaintiff executed two leases to C. A. Storer on June 16, 1939, one covering a tract of land containing 27 acres for a consideration of $5,400 cash, the other lease covering a tract of land containing 42 acres for a consideration of $8,400. We also find two leases executed on the same tracts of land by the plaintiff to the defendant calling for the same considerations. We gather from the testimony that the plaintiff executed the leases to C. A. Storer at the request of the defendant and, some days thereafter, plaintiff executed the two leases in favor of the defendant at the defendant's request on the advice of defendant's counsel for the protection of the defendant's royalty interest. The defendant gave the plaintiff two personal checks for the purchase price of the lease, one for $5,400 and the other for $8,400. The check for the $5,400, the purchase price of the lease on the 27 acres of land, was paid. The defendant concedes that there was no suspensive condition agreed on with respect to this lease and that he, the defendant, relied on the plaintiff's warranty of title. The sole controversy with respect to the purported suspensive condition is directed at the lease on the 42 acres of land.

It appears from the testimony that the lease executed in favor of the defendant on this 42 acres of land took the place of and superceded the Storer lease. At the time the lease was executed in favor of the defendant, the plaintiff called the defendant's attention to the fact that the check the defendant gave him when the

Storer lease was executed contained an error, viz.: Eighty-four Dollars was written in the body of the check and $8,400 was written in numerals at the right hand side of the check. The defendant executed another check for $8,400. When this check was presented to the bank on or about July 1, 1939, the bank refused to pay at the instructions of the defendant.

The plaintiff's version of what transpired at the time the lease was executed is to the effect that he had offers for a lease on this property of an equal amount to that agreed to by the defendant with the exception of the overriding royalty and that he told the defendant it would have to be a cash transaction because he would not gamble on whether the well being drilled on the adjoining property would produce or not. He also stated that he dealt solely with the defendant and the name of Storer was placed in the first lease at defendant's request. His testimony is supported by the notary and his attorney. Two of the witnesses to the leases corroborate him to a great extent. The testimony of Mr. Storer corroborates the plaintiff because he stated that he knew nothing about the transaction until the bank called on him with reference to a $5,400 draft in connection with the lease on the 27 acres. Storer stated that he called up Vincent & Welch and they paid the draft. He further stated that he had no interest in either of the leases.

From the defendant's version of the transaction, it would appear that he was representing the plaintiff and selling the leases to Vincent & Welch through a Mr. French. We do not know what the defendant might have had in his mind with reference to the purchase and sale of these leases. However, he certainly was not buying the leases for Storer and we are at a difficulty to understand how he could be acting for the plaintiff, as the plaintiff's agent.

The defendant offered in evidence a check which he claims is the one he gave the defendant on June 16, 1939, calling for $8,400, which contains a notation as follows: "To be held till titles is approved by C. A. Storer." He testified that when he issued the second check to correct the mistake in the first one, that he kept the first check, which he testifies is the one filed in the record. There is testimony to the effect that defendant destroyed the erroneous check at the time he executed the new one. There were other checks executed by the defendant on the same day. The other checks are printed on different paper and by a different concern. The disputed check is on a gray-blue paper and printed by Clarke G. Courts, Houston, Texas. All the other checks executed by the defendant on that day, one to the Clerk of Court for drawing the lease, one to the plaintiff for $5,400, one to Abstract Company for $25 and one to E. H. Guillory for

$25 are on light gray paper and are printed by Todd Bankers Supply. These several checks have a bunch of rice printed on their face. The defendant attempts to explain this by stating that he carried around a variety of blank checks. It is surpassingly strange that this check is different from all the rest and that the plaintiff retained it after he had executed a new check that contained no such notation. Moreover, it does not conform to reason that Storer would have to approve the title of the land when he knew nothing of the transaction and had no interest in it.

The defendant offered another instrument to support his contention, wherein there was an agreement in reference to a royalty signed by the plaintiff, which contained a notation thereunder as follows: "42 acres more less I will give 1/96 overriding when title accepted by Storer." The plaintiff offered testimony to the effect that the words, "When title accepted by Storer," were not on the instrument when he signed it. In view of the testimony in respect to the check and this instrument, we are constrained to accept the plaintiff's version of the transaction especially since there is no good reason for Storer to approve the titles. The plaintiff's version is further corroborated by the fact that the written contract of lease passed before a notary public and witnesses contains no such provision. Shortly after the lease was executed the well being drilled on the adjoining tract of land proved to be

a dry hole. If it had resulted in a producer, the situation might have been otherwise.

Furthermore, the evidence shows that the plaintiff is a man of some financial means. The defendant admits that he was satisfied with plaintiff's warranty as to the 27 acres of land and did not require an approval of the title. If he had not been satisfied with the defendant's warranty as to the 42 acres of land, it is strange that no provision was inserted in the lease requiring an approval of title.

There is evidence in the record showing that the plaintiff did hold the check for more than six days before it was presented for payment at the defendant's request in order that the defendant might have the title examined. There is evidence also that defendant requested additional time for this purpose and that the plaintiff refused to grant it. However, the plaintiff at no time admitted that the transaction was dependent on the approval of the title by Storer and insisted on the payment of the check before the completion of the well.

We are not impressed with defendant's contention that he was acting as agent for the plaintiff especially so when the lease was executed in favor of the defendant. The plaintiff had a good offer for a lease on this property and we could see no reason why he would give a lease to the defendant to peddle or speculate with that was dependent upon a suspensive condition.

The defendant has failed to prove that the plaintiff's title is not valid. He relies on some curative work that was instituted by the plaintiff at the defendant's request. It seems that this property had been sold at sheriff's sale on two different occasions. The plaintiff acquired the property at the second sheriff's sale. There were leases on this property and some mineral deeds given by the prior owners. The proces verbal of the sheriff's sale ordered the cancellation of the leases and mineral deeds. However, it appears that through error or oversight these instruments were not canceled by the Clerk of Court. The defendant takes the position that the plaintiff's title is not a valid and merchantable one because the leases and mineral deeds were not canceled. The curative work suggested by the defendant and instituted by the plaintiff was to have these leases and mineral deeds canceled from the record. The fact that the clerk through oversight failed to cancel these instruments in no wise made the plaintiff's title precarious for the reason that the sheriff's deed transferred the property to the plaintiff free of all encumbrances whatsoever and the fact that the plaintiff instituted the curative proceedings was no admission on his part that his title was precarious. We see no merit in this contention.

For the reasons assigned, the judgment is affirmed at appellant's cost.

O'NIELL, C. J., absent.